(No. 32669.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL TEMPLE *et al.,* Plaintiffs in Error.

*Opinion filed March 17, 1954.*

Myer H. Gladstone, and Robert W. Heinze, both of Chicago, for plaintiffs in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur F. Manning, and Jordan Jay Hillman, all of Chicago, of counsel,) for the People.

Mr. Justice Bristow delivered the opinion of the court:

This is a writ of error to the criminal court of Cook County, seeking a reversal of a judment sentencing defendant Paul Temple to the Illinois State Penitentiary for the crime of conspiracy for a term of not less than one nor more than four years, and of a judgment sentencing defendant William L. McFarling to the Illinois State Penitentiary for conspiracy for a term of not less than one year nor more than one year and one day. These judgments against the defendants were entered upon their respective pleas of guilty.

The indictment, returned November 3, 1950, charged the defendants together with Carl A. Barrett, E. L. Marks and John Doolin as follows: "The Grand Jurors, chosen, selected and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois upon their oaths present that one Paul Temple, one W. L. McFarling whose first name in unknown to said Grand Jurors, one John R. Doolin, one Carl A. Barrett and one E. L. Marks whose first name is unknown to said Grand Jurors late of the County of Cook, on the ninth day of May in the year of our Lord one thousand nine hundred and forty nine in said County of Cook, in the State of Illinois aforesaid, unlawfully, willfully and deceitfully conspired, combined, confederated and agreed together with each other and with divers other

persons whose names are unknown to said Grand Jurors, unlawfully and wilfully to cheat and defraud United States Mutual Insurance Company, a corporation, of a large amount of money, personal goods and property, to wit: two hundred seventeen thousand five hundred dollars in money, of the value of two hundred seventeen thousand five hundred dollars lawful money of the United States of America, the money, personal goods and property of said United States Mutual Insurance Company; contrary to the Law, and against the peace and dignity of the same People of the State of Illinois."

The defendant John Doolin pleaded guilty and was placed on probation. Defendants Carl A. Barrett and E. L. Marks were placed on trial before Judge Wilbert F. Crowley with a jury on the aforesaid indictment. At the close of the People's case, by agreement of counsel, the jury was instructed to find the defendant Evelyn Marks not guilty. The jury found defendant Carl A. Barrett guilty of conspiracy and fixed his punishment at a fine of $2000, and judgment was entered thereon in accordance therewith. A hearing was had before Judge Crowley on the respective pleas of guilty of defendants Temple and McFarling. At the time of their pleas the defendants were duly warned as to their constitutional rights and the consequences of their pleas. It was stipulated that the evidence and testimony in the case of The People of the State of Illinois v. Carl A. Barrett and E. L. Marks, wherein Temple and McFarling testified for the prosecution, would stand as the evidence and testimony on their pleas of guilty in the case of The People of the State of Illinois v. Paul Temple and William L. McFarling.

On June 5, 1952, a hearing was had before Judge Crowley on pleas of guilty and applications for probation of the defendants. Both Temple and McFarling had been helpful to the State in procuring an indictment against and in the conviction of Barrett. They expected and

claimed they were promised leniency for this co-operation. Suffice it to say at this point, without indulging in the details, that there was considerable confusion and very much of a conflict in the interpretation of the agreements made between counsel for defendants and the State's Attorney's office. The defendants' applications for probation were denied, and they were each given the maximum punishment under the statute, namely, one to five years in the Illinois Penitentiary and a $2000 fine.

Only superficially is it necessary to detail the offense underlying the conspiracy prosecution. It is alleged that the United States Mutual Insurance Company was cheated and defrauded of a large sum of money, namely, $217,500. It appears that Barrett was the major swindler, he having profited to the extent of $200,000. Temple received about $25,000 which it was claimed was the commission due him from the transaction. McFarling received a much smaller sum of money which covered services rendered and expenses.

The State's Attorney's office was naturally very much interested in the prosecution of the wrongdoers. It is undisputed that the State could not have procured the indictment in this case without the appearance of Temple and McFarling before the grand jury. It likewise clearly appears that the State would have been helpless in the trial and conviction of Barrett without the testimony of the defendants. There is no question but what the State's Attorney's office did interview the defendants and their counsel and did give them some assurances of a measure of leniency in consideration of their assistance. George F. Callaghan, who represented the defendants in support of their motion to vacate the judgment, in addressing the court, had this to say: "I say again, there is a dispute about this; that in the presence of the two defendants, in the presence of Mr. Burns, in the presence of Dick Gallagher, and I believe Mr. Kuh was still there—he excused himself at one time during the meeting and said he had to go to the front

office to see whether it was all right for them to testify, and whether this happened in the time he was gone I am not too sure. I said to Temple and McFarling in the presence of these gentlemen I have named: 'Now, you men understand the circumstances under which you are to testify before the Grand Jury, do you? If you don't, I am going to make it very clear to you so that there may never be any misunderstanding about it. If you men testify before the Grand Jury you cannot be left out of the indictment.' I had asked they be left out of it, but the State told me they would have to be included in the indictment. 'You cannot be left out of the indictment in this case. However, when the cases come on for trial you will be granted a severance; you will testify as witnesses for the State, and you will not thereafter be prosecuted.'

"When I made that remark Mr. Burns said, 'You ought not to have said that in front of all these people because it will be said that these men might be cross-examined, and if something is said we would rather not have it said in the presence of everyone.' I said, 'I will take them across the hall and explain it to them in detail.' I took them across to Mr. Blattberg's office and explained it in the most intimate detail.

"Within several minutes after that, Mr. Kuh came back to the office and said, "It is OK for them to testify. I have been to the front office.' Now, what went on in the front office I don't know."

The record bears out the accuracy of each of the foregoing statements. Let us consider the significance of the admonition of Burns. The testimony of an accomplice is scrutinized most carefully. An accomplice is frequently asked if his testimony is not given in consideration of promises of leniency. It is only fair to observe that Burns was simply exhibiting a measure of caution that too much publicity be not given the deal that was being made with the defendants.

Callaghan further indicated to the court that the first intimation that he had of a repudiation of the agreement came from Gallagher, an assistant State's Attorney, when this case was assigned for trial in the court room of Judge Kluczynski, and Gallagher informed Callaghan that he was not longer in charge of the case and that it was now assigned to Clem Cody. Callaghan said, "I hope you pass on to your successor the fact that we had a deal in this case" and Gallagher replied, "I don't know what you are talking about. We had no deal." Immediately, thereupon, Callaghan spoke to State's Attorney Boyle with reference to filing a plea in bar, and according to Callaghan, Boyle felt that a plea in bar might be sustained but suggested that Callaghan look at it in a practical way since three persons would testify that there was no deal and Callaghan was the only person who would testify to a deal. Thereupon, according to Callaghan, the following conversation took place between Boyle and Callaghan:

" 'Why don't you enter a plea of guilty to the conspiracy count and we will dismiss all of the other indictment.' I said, 'That leaves me in a position where I am back again where we started from. The immunity we thought we had is gone, and I will be in the position of causing these defendants to testify for the State simply upon a statement to the Court afterward that they are entitled to the utmost consideration.' He said, 'will do more than that.' Now, the 'more than that' has never been done. 'More than that' has a connotation to me as a lawyer, and the 'more than that' Your Honor must understand, of course, because you for a long period of time were the First Assistant State's Attorney here and probably in many circumstances dealt with lawyers for defendants who were going to testify for the State, and 'I will do more than that' means to me that these men could reasonably expect, at the very worst, probation in this case if they testified for the State."

This colloquy then took place:

"Mr. Callaghan: Does your Honor know, had we tried this case these defendants would have been entitled to a directed verdict on a variance in this case, and now they stand convicted and sentenced to one to five. The proof in this case was that checks were received, whereas the charge in the indictment was conspiracy to defraud the United States Mutual Company of its money and property. There is no question but that there is a fatal variance.

"The Court: What is the variance?

"Mr. Callaghan: They are charged in the indictment with receiving money and property, and the proof showed they received checks."

The hearing was then continued to Monday, August 7, 1952, at which time Callaghan read from a transcript indicating what Breen, the first Assistant State's Attorney, had told the court:

"Mr. Breen: I will first state the agreement and the conversation I had with George Callaghan, the attorney of record in this case, representing both Temple and McFarling. Temple and McFarling were co-defendants in this conspiracy indictment. They offered to plead guilty, which was an accomplishment for the State's Attorney's office. We had a conviction and they offered to turn State's evidence on behalf of the prosecution and testify against Barrett.

"Barrett we desired to convict. We felt that he was the recipient of the money, two hundred thousand dollars, and Mr. Boyle and myself felt that the testimony of both Temple and McFarling would greatly bolster the State's case.

"With that in mind I agreed to this extent, and this extent only, with Mr. Callaghan, that if they did plead guilty, both of them, and they both testified in the case that I would make this statement to the court at the conclusion of the case: as to Temple, in consideration of his testimony and plea of guilty, he is entitled to some consideration —

period. That is as far as I went or as Mr. Boyle went and I am sure Mr. Callaghan will not disagree with that statement.

"As far as McFarling is concerned, in the event he entered an application for probation, and in consideration of his plea of guilty and testimony, I would not oppose probation. We would not affirmatively recommend it; we would not oppose it.

"That is as far as any agreement went between defense counsel, Mr. Callaghan, and myself.

"The Court: That is exactly what you told me yesterday in chambers.

"Mr. Callaghan: I think Mr. Breen should add a little bit to what has been said. What Mr. Breen should add now is, 'I will advise the court that both Mr. Boyle and I felt that without the co-operation and the testimony of Temple and McFarling, the State could not obtain a conviction in this case. We will advise the court that because of Temple's co-operation in this case and his testifying for the State, he is entitled to consideration.'

"I then said to Mr. Breen, 'Would you tell the court he is entitled to the utmost consideration?' He said, 'No, if I used the word "utmost," that is an outright recommendation of probation. I don't want to be in a position of outright recommendation.' "

With respect to the motion for probation of McFarling, the assistant State's Attorney, Clem Cody, had this to say: "We neither recommend nor oppose it, Judge, but leave it up to your honor. That's the way Mr. Breen put it to me." Here the court inquired if McFarling had a record and he was assured that he had none and he was further assured that McFarling had not profited from the swindle of the United States Mutual Insurance Company. Then the court said:

"In McFarling's case, in my own mind I feel I have been too severe. I am going to change that. I don't know

whether I will sentence him to a year in the penitentiary—which I won't do if I feel that the amount of restitution I can exact from him which he could pay would be an equitable amount of restitution. The reason I have a serious question about probation for McFarling is that if restitution is ordered on the basis of his getting something out of this, and he actually got nothing out of it, I ought not to charge him with it. Therefore I am asking you now to find out what he actually got out of it and I will see if I can have my conscience indicate to me what is the right kind of an order to enter as to him in the way of restitution on probation. If I cannot determine that, it will be a year to a year and a day in the penitentiary for him, without question."

The foregoing represents an odd perspective. Paraphrasing, if McFarling had been a major offender and collected a sum of money he would be given probation and ordered to restore the same. On the other hand, if he was only mildly involved and profited nothing, he must go to the penitentiary. The court's conscience would not tolerate an order of restitution of something he didn't get. The court thereupon sentenced McFarling to from one year to one year and one day in the penitentiary and sentenced Temple to from one to four years in the penitentiary.

On the trial of Barrett, as we have heretofore indicated, Temple testified for the prosecution. On cross-examination the following was developed:

"After the State's Attorney began to investigate Doolin, McFarling and me, I came to the Criminal Court building and brought Mr. Callaghan with me. I offered to testify before the Grand Jury.

"I talked to Assistant State's Attorneys Gallagher and Kuh.

"My attorney was asked if he would permit Mr. McFarling and myself to testify before the Grand Jury as to the fact of this case, and I was advised to leave the

room. When I returned, Mr. Callaghan informed me if Mr. McFarling and myself would so testify, if an indictment was returned in the case and we became state's witnesses, that the indictment would be ultimately dismissed against us. My attorney told that to me and Mr. McFarling in the State's Attorney's office after we left the room in which Gallagher and Kuh were.

"The statement was not made by Mr. Gallagher in my presence.

"Q. And so based on the promise that your attorney gave you that you wouldn't go to jail for all what you did, you did testify against Mr. Barrett and Miss Marks, is that right?

"A. That I would testify to the facts in the case."

Giving consideration to all of the proof on this issue, we are of the opinion that the defendants entered their pleas of guilty in this cause relying upon representations that they would be extended leniency in consideration of the assistance that they had given the State dealing with their codefendants. It is uncontradicted that such representations were made to them by their own counsel, Callaghan. There is a strong implication that the State's Attorney's office subscribed to those representations. There are many other circumstances in the record pointing to this same conclusion, but we deem it unnecessary to burden this opinion with their recital. What we said recently in the case of *People* v. *Morreale,* 412 Ill. 528, at 531, applies to the situation before us. "Permission to withdraw a plea of guilty and enter a plea of not guilty is a matter within the discretion of the court, yet it is a judicial discretion which should always be exercised in favor of innocence and liberty and in the light of the preference that is shown by law for a trial upon the merits by a jury. Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's At-

torney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty. *People* v. *Hancasky,* 410 Ill. 148; *People* v. *Jameson,* 387 Ill. 367; *People* v. *Adams,* 379 Ill. 323." The motion by defendants for leave to withdraw their pleas of guilty and enter pleas of not guilty should have been allowed.

On August 22, 1952, the defendants filed a petition to vacate and set aside the judgment entered herein on August 5, 1952, and for leave to withdraw their pleas of guilty and to plead not guilty. The petition, in addition to alleging the grounds heretofore considered, alleged that the indictment is void because it does not sufficiently charge a conspiracy to cheat and defraud, in that it fails to describe the methods employed in perpetrating the cheat and fraud. It is alleged that the failure offends sections 8 and 9 of article II of the constitution of the State of Illinois which requires that where an indictment is one where imprisonment may be in the penitentiary, the accused will have the right to demand the nature and the cause of the accusation. Since, under the statutes in this case, imprisonment may be in the penitentiary, the accused is entitled to protection under sections 8 and 9 of article II of the Illinois constitution. (*People* v. *Rice,* 383 Ill. 584.) If an indictment is, in fact, void in that it fails to set out particularly the offense charged, then a plea of guilty will be insufficient to waive the objection to the indictment. *Klawanski* v. *People,* 218 Ill. 481; *People* v. *Brown,* 312 Ill. 63; *People* v. *Martin,* 314 Ill. 110; *People* v. *Wallace,* 316 Ill. 120.

In the case of *People* v. *Rice,* 383 Ill. 584, at page 588, this court said: "Section 9 of the Bill of Rights provides

that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. The purpose of this guaranty is to secure to him such specific designation of the offense laid to his charge as will enable him to prepare fully his defense and to plead the judgment in bar of a subsequent prosecution for the same offense." (*People* v. *Barnes,* 314 Ill. 140; *People* v. *Covitz,* 262 Ill. 514; *People* v. *Clark,* 256 Ill. 14.) That case involved a misdemeanor, the information charging a solicitation for prostitution purposes and the information was assailed specifically on the ground that there was not a specific designation of the offense in that it failed to allege the name or names of the persons solicited or the places where the solicitation occurred. A motion to quash was sustained in the trial court, and the State filed a writ of error in the Supreme Court directly to the trial court.

In the case of *People* v. *Brown,* 336 Ill. 257, the sole question before this court was whether an information charging a misdemeanor to violate the Medical Practice Act, (on which the defendant was fined $250) charged a crime. This court at page 258 said "The first contention of the plaintiff in error is that the information is not sufficiently specific to advise him of the nature and cause of the accusation or to state an offense punishable under said act. From our view of the case, that is the only contention which needs to be considered. Section 9 of article II of the constitution provides that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. The purpose of this guaranty is to give the accused such specific designation of the offense as will enable him to prepare his defense and to plead the judgment in bar of a subsequent prosecution for the same offense." The above case, although involving a misdemeanor, came to this court on a direct proceeding from the county court of Bureau County.

278

In light of the foregoing, we are therefore of the opinion that there was presented in this case a debatable constitutional question which warrants a direct review in this court. It is not necessary that we pass upon the validity of the indictment to justify the late filing of the motion challenging its sufficiency. This motion doubtless would have been filed in proper time had it not been for the special circumstances wherein the defendants were induced to file their pleas of guilty, expecting some form of leniency.

The judgment is reversed and this cause therefore is remanded to the criminal court of Cook County, with directions that Temple and McFarling be allowed to withdraw their pleas of guilty and plead otherwise.

*Reversed and remanded, with directions.*